UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHANIE PRASAD,<br><br>    Plaintiff,<br><br>v.<br><br>PINNACLE MANAGEMENT SERVICES COMPANY, LLC, et al.,<br><br>    Defendants. | Case No. 5:17-cv-02794-HRL<br><br>**INTERIM ORDER RE DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. No. 14 |

After submitting an online job application, plaintiff Stephanie Prasad was hired in May 2016 by defendant Pinnacle Property Management Services, LLC (Pinnacle)[1] as a property manager for the "Domus on the Boulevard" apartment complex in Mountain View, California. Her employment was terminated just under a year later. Prasad says that she suffers from type I diabetes and generally was able to perform her work duties, but occasionally required certain accommodations, such as a modified work schedule. She claims that, due in part to lengthy work hours, she began experiencing health complications related to her diabetes. Plaintiff was placed

---

[1] Defendant says that it erroneously was sued as "Pinnacle Management Services Company, LLC." Further, Pinnacle says that it is not affiliated with any entity by that name, no such entity employed plaintiff, and, as far as it is aware, no such company exists. (Dkt. 14-1, Decl. of Erinn Cassidy ¶ 2; Dkt. 14-2, Decl. of Douglas G.A. Johnston, ¶ 3).

on medical leave for two weeks in October 2016. Upon her return, Prasad says her position was filled by another employee, and she was given a new position as a "Roving Manager." Plaintiff considered this reassignment a demotion because she says it was temporary in nature and she earned less money than she did as a property manager.

Claiming that Pinnacle misclassifies its property managers as exempt from overtime pay, Prasad filed this putative class, collective, and representative action, asserting wage-and-hour claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. and various provisions of the California Labor Code. She also asserts several individual state law claims for relief based on Pinnacle's alleged disability discrimination and intentional infliction of emotional distress.

Pinnacle now moves to compel arbitration pursuant to an Issue Resolution Agreement (IRA or Agreement) it claims Prasad assented to and signed when she applied for employment with the company. That IRA provides, in relevant part:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment [sic], and/or cessation of employment with Pinnacle Property Management Services, LLC **exclusively** by final and binding **arbitration** before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans With Disabilities Act, state and federal anti-discrimination statutes, the law of contract, and law of tort.

(Dkt. 14-1, Decl. of Erinn Cassidy ("Cassidy Decl."), Ex. A at ECF p. 6). Further, the Agreement states that "[e]ach arbitration proceeding shall cover the claims of only one Employee. Unless the parties mutually agree, the parties agree that the arbitrator has no authority to adjudicate a 'class action.'" (Id. at ECF p. 15, Rule 9.f.ii.). As such, Pinnacle contends that Prasad must arbitrate her individual claims and that the putative class claims must be dismissed without prejudice. Prasad opposes the motion, arguing that no arbitration agreement was ever formed. But even if there was a valid agreement to arbitrate, she contends that the Agreement is (1) unenforceable because it contains an unlawful concerted action waiver and (2) procedurally and substantively unconscionable for a number of reasons. Upon consideration of the moving and responding

2

papers, as well as the arguments of counsel, the court rules as follows.[2]

**LEGAL STANDARD**

The Federal Arbitration Act (FAA) governs the enforceability and scope of an arbitration agreement and provides that "[a] party to a valid arbitration agreement may 'petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When ruling on such a petition, the court must determine (1) whether a valid arbitration agreement exists and, if so, (2) whether it encompasses the dispute at issue. Id.; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "If the answer is yes to both questions, the court must enforce the agreement." Lifescan, Inc., 363 F.3d at 1012; Chiron Corp., 207 F.3d at 1130. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

"Arbitration is a matter of contract and the FAA requires courts to honor parties' expectations." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 351 (2011). A court may compel the parties to arbitration only when they have agreed to arbitrate the dispute at issue. Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 302-03 (2010). Additionally, arbitration should be denied if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress, or unconscionability. 9 U.S.C. § 2; Rent-A-Center, West, Inc. v. Jackson, 130 S.Ct. 2772, 2776 (2010). In making this determination, courts generally apply ordinary state-law principles that govern the formation of contracts. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

**DISCUSSION**

At the threshold, Prasad contends that Pinnacle has not met its burden of proving the existence of a valid arbitration agreement because defendant has not demonstrated that she agreed to enter any agreements electronically or that she herself signed the IRA. Pinnacle maintains that

---

[2] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned. 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.

3

only Prasad could have filled out the personal information in her online job application and that, based on its application procedures, it would be impossible for Prasad to have submitted an employment application without first agreeing to the IRA.

In California, "[t]he petitioner bears the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence, while a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense." Ruiz v. Moss Bros. Auto Group, Inc., 232 Cal. App. 4th 836, 842 (2014) (internal citation omitted). "The trial court sits as the trier of fact, weighing all the affidavits, declarations, and other documentary evidence, and any oral testimony the court may receive at its discretion, to reach a final determination." Id. (internal citation omitted).

Under California law, adopted as part of the Uniform Electronic Transactions Act (UETA), an electronic signature has the same legal effect as a handwritten signature. Ruiz, 232 Cal. App.4th at 843 (citing Cal. Civ. Code § 1633.7). "Still, any writing must be authenticated before the writing, or secondary evidence of its content, may be received in evidence." Id. "'Authentication of a writing means (a) the introduction of evidence *sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is* or (b) the establishment of such facts by any other means provided by law.'" Id. at 843 (quoting Cal. Evid. Code § 1400). "An electronic record or electronic signature is attributable to a person if it was the act of the person." Cal. Civ. Code § 1633.9(a). "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Id.

The California UETA "applies only to a transaction between parties each of which has agreed to conduct the transaction by electronic means." Cal. Civ. Code § 1633.5(b). "Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct." Id.; J.B.B. Investment Partners, Ltd. v. Fair, 232 Cal. App.4th 974, 990-91 (2014).

Pinnacle argues that under Condee v. Longwood Mgmt. Corp., 88 Cal. App.4th 215 (2001), it need not authenticate Prasad's electronic signature as part of its burden of proof.

4

"Properly understood, *Condee* holds that a petitioner is not required to authenticate an opposing party's signature on an arbitration agreement *as a preliminary matter* in moving for arbitration *or* in the event the authenticity of the signature is not challenged." Ruiz, 232 Cal. App.4th at 846. But where, as here, the employee contests the validity of the electronic signature, the employer has the burden of proving by a preponderance of the evidence that the signature is authentic. Id.; see also Nanvati v. Adecco USA, Inc., 99 F. Supp.3d 1072, 1076 n.3 (N.D. Cal. 2015) (same).

In this case, Pinnacle submitted a copy of the purported Agreement through the initial declaration of its Vice President of Human Resources, Erinn Cassidy, who avers that the document is contained in Prasad's personnel file as maintained in the ordinary course of Pinnacle's business. (Cassidy Decl. ¶¶ 5-6). The Agreement is dated "05/03/2016" and contains a signature line with the typed name "Stephanie K Prasad," as well as the last four digits of Prasad's Social Security Number. (Id., Ex. A). Although a box next to the signature line labeled "AGREED" is not checked, Cassidy states that Pinnacle does not require applicants to check that box and deems a typed signature sufficient for applicants to agree to the IRA and to proceed with the application process. (Id. ¶ 8). Thus, according to defendant, the fact that an individual is hired by the company signifies that they have agreed to the IRA. (Id.). Pinnacle acknowledges that the Agreement is not signed by the company. But, says Cassidy, the IRA is offered by Pinnacle as a condition of employment; so, by drafting the agreement as a pre-hire document using Pinnacle's name and letterhead, Pinnacle says it intends to be bound by the IRA. (Id. ¶ 9).

Plaintiff, on the other hand, avers that she "do[es] not have a specific recollection of reviewing the [Agreement]" and says that she "did not type [her] name, the date, or the last four digits of [her] social security on the [Agreement]." (Dkt. 15-1, Declaration of Stephanie Prasad (Prasad Decl.) ¶¶ 7-8). She also "do[es] not recall authorizing anyone to do so on [her] behalf." (Id. ¶ 8). Further, Prasad attests that, to her knowledge, she was not required to review the IRA or to assent to its terms prior to or in conjunction with her employment application. (Id. ¶ 7). Plaintiff also claims that, in applying for a job with Pinnacle, she never agreed to enter any agreements electronically. (Id. ¶ 9). Indeed, she says that she did not know that the Agreement existed, until she received a copy of it with her personnel file shortly before filing this suit. (Id. ¶

5

10). As such, Prasad maintains that Cassidy's declaration is insufficient to establish that she actually signed the IRA.

In a supplemental declaration, Cassidy supplies additional details about the electronic application process. Specifically, she states that Pinnacle posts open employment positions on various locations online, including its own website and others such as Indeed.com and CareerBuilder.com. (Dkt. 16-1, Cassidy Reply Decl. ¶ 3). To apply for employment, an applicant clicks on an "Apply Now" button on these websites and is then taken to a website hosted by PeopleAnswers, a third party vendor. (Id.). Cassidy says that applications are only available through the PeopleAnswers site, which in turn, is only accessible through the online job posting. (Id.). Further, Cassidy currently (and at the time Prasad applied), PeopleAnswers manages defendant's online application system; posts application material created by and received from Pinnacle; and maintains active applications for employment. (Id. ¶ 4). At the time Prasad applied, for every single job application, Cassidy says that the initial documents presented on the PeopleAnswers system were the Issue Resolution Program and the IRA. (Id. ¶ 5).

According to Cassidy, an applicant cannot access the job application form unless she first consents to the IRA; and, it is only after consenting to the IRA that the applicant can proceed to fill in her personal information on the online application form. (Id.). Once the application is filled in, Cassidy says it is submitted to the PeopleAnswers online platform, and PeopleAnswers notifies Pinnacle that an applicant submitted an application, complete with the IRA. (Id. ¶ 7). Additionally, Cassidy says that the PeopleAnswers system "locked" application materials, such that Pinnacle representatives could view content entered by the applicant, but no one from Pinnacle or PeopleAnswers could make any changes to it. (Id.). Pinnacle also submits a copy of Prasad's employment application and points out that it was signed and dated the same day as the IRA. (Id., Ex. A). Simply put, Pinnacle says that the fact that Prasad was able to submit an application at all, and that Pinnacle processed her application and hired her, is proof that she assented to the IRA.

Authenticating a signature under the UETA depends on the particular facts presented in any given case. There is no bright line rule as to what constitutes sufficient evidence, but cases

6

cited by the parties provide some guidance. Summary assertions without foundation are clearly insufficient; and, the mere fact that an agreement bears an electronic signature with a date and time stamp, by itself, is not enough. See Ruiz, 232 Cal. App.4th at 843-44. In concluding that the defendant's evidence was insufficient, the Ruiz court remarked that something more was needed, e.g., that the signature could only have been placed on the document by someone using the plaintiff's unique username and password; the date and time printed next to the signature indicated when the signature was made; and all employees were required to use their unique user name and password to log on to the defendant's human resources system to electronically sign documents. Id. Cf. Espejo v. Southern California Permanente Med. Group, 246 Cal. App.4th 1047, 1053-54 (2016) (concluding that declarations established the existence of an agreement to arbitrate where the declarant explained the electronic review and signature process, including the use of a unique user name and password, as well as what the plaintiff would have been required to do as he moved through various screens and prompts).

In this case, there is no evidence that plaintiff was required to use a unique user name or password. But that, by itself, is not dispositive. Defendant presents an IRA bearing plaintiff's typed name, the last four digits of her Social Security number, and the same date as her employment application form (which application form Prasad indisputably signed). Moreover, Pinnacle contends that Prasad's application papers contain information that only she would know----an assertion that Prasad does not deny. Plus, says Pinnacle, plaintiff merely disclaims a "specific" memory of reviewing the IRA---suggesting that she may have a general recollection of doing so.

Perhaps the strongest evidence in plaintiff's favor is the unchecked AGREED box. While that unchecked box is not a problem from Pinnacle's perspective, it cuts against defendant with respect to Prasad's assent. Prasad also denies typing her name, date, or the last four digits of her Social Security number on the IRA and does not recall allowing anyone else to do so on her behalf. She does not recall reviewing or agreeing to the IRA, or even being required to do so prior to or in conjunction with her job application. But, Pinnacle argues that, notwithstanding what Prasad may or may not recall, she must have agreed to the IRA because her electronic consent to

7

the arbitration agreement necessarily was a condition precedent to filling out an online application. Prasad argues that Cassidy's declaration is simply a second-hand account of how that process works. However, "the burden of authenticating an electronic signature is not great," Ruiz, 232 Cal. App.4th at 844, and courts have found declarations from human resources employees sufficient to authenticate electronic signatures. Tagliabue v. J.C. Penney Corp., No. 1:15-cv-01443-SAB, 2015 WL 8780577 at *2 (E.D. Cal., Dec. 15, 2015) (citing cases). Accordingly, the court accepts Cassidy's explanation and, on balance, concludes that Pinnacle has submitted sufficient evidence to authenticate the signature on the IRA and that there exists a valid agreement to arbitrate.

Even so, Prasad contends that the IRA is unenforceable because it contains a concerted action waiver and is, in any event, procedurally and substantively unconscionable for various reasons. Because the court's ruling on these contentions may be affected by the Supreme Court's review of the Ninth Circuit's decision in Morris v. Ernst & Young, 834 F.3d 975 (9th Cir. 2016), the court defers ruling on those issues and grants Pinnacle's request to stay this action pending the Supreme Court's decision.

SO ORDERED.

Dated: January 12, 2018

_____
HOWARD R. LLOYD
United States Magistrate Judge

8