UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

STEPHANIE PRASAD,

          Plaintiff,

   v.

PINNACLE PROPERTY MANAGEMENT
SERVICES, LLC,

          Defendant.

Case No.17-cv-02794-VKD

**ORDER GRANTING DEFENDANT'S
MOTION TO COMPEL ARBITRATION**

Re: Dkt. No. 14

## I.    FACTUAL AND PROCEDURAL BACKGROUND

After submitting an online job application, plaintiff Stephanie Prasad was hired in May

2016 by Pinnacle Property Management Services, LLC ("Pinnacle")[1] as a property manager for

the Domus on the Boulevard apartment complex in Mountain View, California. Her employment

was terminated just under a year later. Ms. Prasad says that she suffers from type I diabetes and

generally was able to perform her work duties, but occasionally required certain accommodations,

such as a modified work schedule. She claims that, due in part to lengthy work hours, she began

experiencing health complications related to her diabetes. Ms. Prasad was placed on medical

leave for two weeks in October 2016. Upon her return, Ms. Prasad says her position was filled by

another employee, and that she was given a new position as a "Roving Manager." Ms. Prasad

considered this reassignment a demotion because she says it was temporary in nature and she

---

[1] Pinnacle says that it erroneously was sued as "Pinnacle Management Services Company, LLC."
After the present motion was filed, the parties stipulated to the dismissal of "Pinnacle
Management Services Company, LLC." Dkt. No. 38. Accordingly, Pinnacle is the sole named
defendant in this matter. All parties have expressly consented that all proceedings in this matter
may be heard and finally adjudicated by a magistrate judge. 28 U.S.C. § 636(c); Fed. R. Civ. P.
73.

earned less money than she did as a property manager.

Claiming that Pinnacle misclassifies its property managers as exempt from overtime pay, Ms. Prasad filed this putative class, collective, and representative action against Pinnacle, asserting eleven claims for relief, seven of which are class/collective/representative claims for relief: (1) failure to pay overtime, FLSA, 29 U.S.C. §§ 201, *et seq.*; (2) failure to pay wages, Cal. Lab. Code §§ 510, 1194, IWC Wage Order 5-2001; (3) failure to provide meal periods, Cal. Lab. Code §§ 226.7, 512, IWC Wage Order 5-2001; (4) failure to provide rest periods, Cal. Lab. Code § 226.7, IWC Wage Order 5-2001; (5) failure to provide itemized wage statements, Cal. Lab. Code §§ 226, 226.3, IWC Wage Order 5-2001; (6) waiting time penalties, Cal. Lab. Code §§ 200-204; and (7) unfair business practices, Cal. Bus. & Prof. Code § 17200, *et seq.* The remaining four claims are Ms. Prasad's individual claims for relief: (8) disability discrimination, Cal. Govt. Code § 12940, *et seq.*; (9) failure to accommodate disability, Cal. Govt. Code § 12940, *et seq.*; (10) failure to engage in the interactive process, Cal. Govt. Code § 12940, *et seq.*; and (11) intentional infliction of emotional distress.

Pinnacle moved to compel arbitration pursuant to an Issue Resolution Agreement ("IRA" or "Agreement") it claims Ms. Prasad assented to and signed when she applied for employment with the company. The IRA provides, in relevant part:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment, and/or cessation of employment with Pinnacle Property Management Services, LLC **exclusively** by final and binding **arbitration** before a neutral Arbitrator. By way of example only, such claims include claims under federal, state and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans With Disabilities Act, state and federal anti-discrimination statutes, the law of contract, and law of tort.

Dkt. No. 14-1, Decl. of Erinn Cassidy ("Cassidy Decl."), Ex. A at ECF p. 6. The Agreement also contains a class action waiver: "Each arbitration proceeding shall cover the claims of only one Employee. Unless the parties mutually agree, the parties agree that the arbitrator has no authority to adjudicate a 'class action.'" *Id.* at ECF p. 15, Rule 9.f.ii. As such, Pinnacle contends that Ms. Prasad must arbitrate her individual claims and that the putative class, collective and

representative claims must be dismissed without prejudice.

Ms. Prasad opposes Pinnacle's motion, arguing that she never signed the IRA and that the Agreement is unenforceable and unconscionable for a number of reasons.

The Court previously ruled that Ms. Prasad entered into an arbitration agreement with Pinnacle. Dkt. No. 21. Because Ms. Prasad's arguments about the unenforceability and unconscionability of the IRA depended, at least in part, on the Ninth Circuit's decision in *Morris v. Ernst & Young*, 834 F.3d 975 (9th Cir. 2016), which was then before the U.S. Supreme Court for review, this Court deferred ruling on those issues and granted Pinnacle's motion to stay the action pending the Supreme Court's decision.

In *Morris*, the Ninth Circuit concluded that the class action waiver in the arbitration agreement at issue was unenforceable under the Federal Arbitration Act ("FAA") because the waiver violated section 7 of the National Labor Relations Act ("NLRA"), which gives employees the right to "concerted activities." 29 U.S.C. § 157. *Morris*, 834 F.3d at 986.

On May 21, 2018, the Supreme Court reversed *Morris* and held that the NLRA does not reflect a clearly expressed and manifest congressional intention to displace the FAA and to outlaw class and collective action waivers. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612 (2018). Shortly afterward, this Court lifted the stay of the present action and gave both sides an opportunity to submit supplemental briefs regarding *Epic*. Dkt. No. 22. Ms. Prasad filed a supplemental brief. Dkt. No. 25. Pinnacle did not.

In her supplemental brief, Ms. Prasad acknowledges that *Epic* is dispositive with respect to her argument that the IRA's class action waiver renders that agreement unenforceable. She therefore cannot maintain the class, collective and representative claims asserted in her original complaint. However, Ms. Prasad contends that *Epic* does not impact her arguments that the IRA is unconscionable for other reasons. Pinnacle maintains that the IRA is neither procedurally nor substantively unconscionable. To the extent there are any improper provisions, Pinnacle contends that they may be severed from the Agreement and that the remainder properly may be enforced.

Meanwhile, Ms. Prasad moved for leave to file a First Amended Complaint ("FAC") to add one additional claim under the California Labor Code Private Attorneys General Act

("PAGA"), Cal. Lab. Code § 2698, *et seq.*[2] Ms. Prasad's motion was noticed for hearing on this Court's calendar, and the Court directed the parties to be prepared at that hearing to also address the remaining issues in Pinnacle's motion to compel arbitration.

Upon consideration of the moving and responding papers, as well as the oral arguments presented, the Court grants Pinnacle's motion to compel arbitration as to Ms. Prasad's individual claims and stays these proceedings pending completion of the arbitration.

## II.  LEGAL STANDARD

The FAA governs the enforceability and scope of an arbitration agreement and provides that "[a] party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4).  When ruling on such a petition, the court must determine (1) whether an arbitration agreement exists and (2) whether it encompasses the dispute at issue.  *See id.*; *see also Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

"Arbitration is a matter of contract and the FAA requires courts to honor parties' expectations."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011).  A court may compel the parties to arbitrate only when they have agreed to arbitrate the dispute at issue. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302-03 (2010).  Additionally, arbitration should be denied if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress, or unconscionability.  9 U.S.C. § 2; *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010).  In making this determination, courts generally apply ordinary state-law principles that govern the formation of contracts.  *First Options*

---

[2] The Court will concurrently issue its separate order granting Ms. Prasad's motion for leave to file an FAC.

1    *of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

2    **III.    DISCUSSION**

3        Ms. Prasad has not challenged Pinnacle's arguments and evidence that the FAA applies or

4    that the IRA encompasses her present dispute with the company.  And, as noted above, the Court

5    has found that Ms. Prasad entered into the IRA with Pinnacle.  Nevertheless, Ms. Prasad maintains

6    that the IRA should not be enforced because several of its terms are unconscionable.  Pinnacle

7    does not dispute that there is some minimal unconscionability presented by at least some of the

8    IRA provisions in question.  However, even if this Court finds that the provisions are

9    unconscionable, Pinnacle argues that the Court should sever them from the IRA, and enforce the

10   remainder.

11       **A.    The Unconscionability Doctrine**

12       In determining whether the IRA is unconscionable, the Court applies "California's general

13   principal of contract unconscionability."  *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 921-22

14   (9th Cir. 2013).  "'Unconscionability is a judicially created doctrine, which the Legislature

15   codified in 1979.'"  *Carbajal v. CWPSC, Inc.*, 245 Cal. App.4th 227, 242 (2016) (quoting

16   *Nyulassy v. Lockheed Martin Corp.* 120 Cal.App.4th 1267, 1280 (2004)).  Under California law:

17       If the court as a matter of law finds the contract or any clause of the contract
18       to have been unconscionable at the time it was made the court may refuse to
         enforce the contract, or it may enforce the remainder of the contract without
         the unconscionable clause, or it may so limit the application of any
19       unconscionable clause as to avoid any unconscionable result.

20   Cal. Civ. Code § 1670.5(a).  "The [unconscionability] doctrine applies to arbitration agreements,

21   even those governed by the FAA."  *Carbajal*, 245 Cal. App.4th at 242.

22       Unconscionability "has both a procedural and a substantive element, the former focusing

23   on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided

24   results."  *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal.4th 83, 114 (2000)

25   (internal quotations and citation omitted).  "The prevailing view is that [procedural and substantive

26   unconscionability] must both be present in order for a court to exercise its discretion to refuse to

27   enforce a contract or clause under the doctrine of unconscionability.  But they need not be present

28   in the same degree."  *Id.* (internal quotations and citation omitted) (alteration in original).

United States District Court
Northern District of California

"Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves." *Id.* (internal quotations and citation omitted). "In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.*

### 1. Procedural Unconscionability

"Procedural unconscionability concerns the manner in which the contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of oppression and surprise involved in the agreement." *Chavarria*, 733 F.3d at 922. "Oppression addresses the weaker party's absence of choice and unequal bargaining power that results in 'no real negotiation.'" *Id.* (quoting *A & M Produce v. FMC Corp.*, 135 Cal. App.3d 473, 486 (1982)). "Surprise involves the extent to which the contract clearly discloses its terms as well as the reasonable expectations of the weaker party." *Id.* (citing *Parada v. Super. Ct.*, 176 Cal.App.4th 1554, 1571 (2009)).

Thus, "[u]nconscionability analysis begins with an inquiry into whether the contract is one of adhesion." *Armendariz,* 24 Cal.4th at 113. "'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Id.* (quoting *Neal v. State Farm Ins. Cos*. 188 Cal.App.2d 690, 694 (1961) (alteration in original). "If the contract is adhesive, the court must then determine whether other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable]." *Id.* (internal quotations and citation omitted) (alteration in original).

The California Supreme Court has observed that there are degrees of procedural unconscionability:

> At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . . Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum. Ordinary contracts of adhesion, although they are indispensable facts of modern life that are generally enforced,

contain a degree of procedural unconscionability even without any notable surprises, and 'bear within them the clear danger of oppression and overreaching. We have instructed that courts must be particularly attuned to this danger in the employment setting, where economic pressure exerted by employers on all but the most sought-after employees may be particularly acute.

*Balthazar v. Forever 21, Inc.*, 62 Cal.4th 1237, 1244 (2016) (internal quotations and citations omitted).

In the present case, Ms. Prasad satisfies the oppression aspect of procedural unconscionability. She contends that the IRA is a non-negotiable contract of adhesion, offered on a take-it-or-leave-it basis. Indeed, Pinnacle documents inform applicants: "You will not be considered as an applicant until you have signed the [IRA]." Dkt. No. 14-1 at ECF p. 5. And, in arguing that Ms. Prasad entered into the Agreement, Pinnacle touts the fact that Ms. Prasad would not have been able to submit her job application unless she first agreed to the IRA. Although the IRA gave Ms. Prasad three days to opt-out, opting out meant that she would have to withdraw her job application. *Id.* at ECF p. 8 (stating that if Ms. Prasad withdraws her consent to the IRA, it means that she "no longer desire[s] for Pinnacle Property Management Services, LLC to consider [her] application for employment.").

Moreover, Pinnacle does not dispute that it had superior bargaining power, and the California Supreme Court has observed:

[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement.

*Armendariz*, 24 Cal.4th at 115.

As for the element of surprise, Ms. Prasad argues that she has no specific recollection of reviewing the IRA and maintains that the Agreement was signed without her knowledge. As discussed, the Court has rejected that latter assertion.

Ms. Prasad nonetheless contends that she did not make an informed decision with respect to the IRA because the Agreement (1) contains a number of unfavorable terms scattered throughout the IRA and (2) fails to disclose the disadvantages imposed upon her by those terms. Pinnacle argues that the IRA clearly stated that it was an arbitration agreement. Additionally,

Pinnacle points out that Ms. Prasad filled out the job application and the IRA, without any external time pressures imposed by the company, and was thus free to review the IRA terms on her own time. Pinnacle does not, however, squarely address Ms. Prasad's arguments that the IRA does not disclose the disadvantages imposed by some of its terms.

Courts have held that a one-sided explanation of benefits, without a corresponding explanation of disadvantages of arbitration, render an arbitration agreement procedurally unconscionable. For example, in *Quevedo v. Macy's Inc.*, 798 F. Supp.2d 1122 (C.D. Cal. 2011), the district court concluded that a "relatively low" level of procedural unconscionability was present where employees likely felt some pressure not to opt out of an arbitration agreement and where the arbitration agreement at issue gave employees a one-sided view of the benefits of arbitration, without alerting them to the potential drawbacks of giving up rights available in federal court to a jury trial, to more extensive discovery, and to appeal. *Id*. at 1136-38. S*ee also Chavarria*, 733 F.3d at 922-23 (concluding that the arbitration agreement in question was procedurally unconscionable where the plaintiff "could only agree to be bound by the [arbitration] policy or seek work elsewhere.").

Ms. Prasad has established some procedural unconscionability, given that the IRA was a contract of adhesion, with no meaningful opt-out, and that Ms. Prasad's agreement to the IRA was not an informed decision to the extent that the IRA does not explain the potential pitfalls and drawbacks of proceeding with arbitration versus litigation. However, a "finding of procedural unconscionability does not mean that a contract will not be enforced, but rather that courts will scrutinize the substantive terms of the contract to ensure they are not manifestly unfair or one-sided." *Balthazar*, 62 Cal.4th at 1244.

### 2. Substantive Unconscionability

"Substantive unconscionability addresses the fairness of the term in dispute." *Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 997 (9th Cir. 2010) (internal quotations and citation omitted). "The focus of the inquiry is whether the term is one-sided and will have an overly harsh effect on the disadvantaged party." *Id*. "Thus, mutuality is the 'paramount' consideration when assessing substantive unconscionability." *Id*. "A contract is substantively unconscionable when it is

unjustifiably one-sided to such an extent that it 'shocks the conscience.'" *Chavarria*, 733 F.3d at 923 (quoting *Parada*, 176 Cal.App.4th at 1573). "In evaluating the substance of a contract, courts must analyze the contract 'as of the time [it] was made.'" *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1172 (9th Cir. 2003) (quoting *A&M Produce*, 135 Cal. App.3d at 487).

Ms. Prasad argues that the IRA is substantively unconscionable for six reasons:

### a. Class/Collective Action Waiver

As stated in her June 8, 2018 supplemental brief, and as confirmed at the further hearing on this matter, Ms. Prasad agrees that, post-*Epic*, the IRA's concerted action waiver is not a basis for finding unconscionability. Accordingly, the Court concludes that the waiver provision is not unconscionable and that Ms. Prasad cannot maintain the class, collective and representative claims asserted in her original complaint.

### b. One-Year Statute of Limitations on Employees' Claims

The IRA requires employees to commence arbitration by filing an "Arbitration Request Form," and imposes a one-sided, one-year limitations period only on employees:

> The 'Arbitration Request Form' shall be submitted not later than one year after the date on which the Employee knew, or through reasonable diligence should have known, of the facts giving rise to the Employee's claim(s). The failure of an Employee to initiate an arbitration within the one-year time limit shall constitute a waiver with respect to that dispute relative to that Employee. Notwithstanding anything stated herein to the contrary, this clause will not affect tolling doctrines under applicable state laws or the employee's ability to arbitrate continuing violations.

Dkt. No. 14-1 at ECF p. 11, IRA Rule 4.b.i.

Ms. Prasad argues that this provision is unconscionable because the statutes on which her claims are based have limitations periods of more than one year—e.g., two years for FLSA claims and three years for FLSA claims arising out of willful violations, 29 U.S.C. § 255(a); three years for overtime pay under the California Labor Code, Cal. Code Civ. Proc. § 338; and four years for unfair competition claims under Cal. Bus. & Prof. Code § 17200, *Power Quality & Electrical Sys., Inc. v. BP West Coast Products, LLC*, No. 16-cv-04791-YGR, 2017 WL 6375760, at *5 (N.D. Cal., Dec. 12, 2017). Ms. Prasad argues that the IRA is doubly unfair in this respect because it only shortens the limitations period for employees, not Pinnacle.

1    Pinnacle acknowledges that there is some amount of unfairness inherent in this provision,

2    but says that the level of unconscionability relative to the IRA as a whole is slim.  Dkt. No. 16 at

3    8-9.  It argues that this is so because the IRA does not affect tolling doctrines under applicable

4    state laws or Ms. Prasad's ability to arbitrate continuing violations.  Additionally, Pinnacle argues

5    that the limitations period imposed by this provision is moot as to Ms. Prasad, who timely filed the

6    present suit.

7    The Court concludes that this provision is unconscionable.  The fact that Ms. Prasad filed

8    this action within the one-year contractual limitations period is irrelevant.  As discussed above, the

9    Court must assess the IRA as of the time it was made, not as of the time Ms. Prasad filed suit.

10   *Ingle*, 328 F.3d at 1172.  In *Ingle*, the Ninth Circuit found unconscionable a similar one-year

11   limitations period that applied only to employees because "the benefit of this provision flows only

12   to [the defendant employer]."  328 F.3d at 1175.  Unlike the provision in *Ingle*, the IRA's

13   limitations clause permits employees to benefit from tolling doctrines under applicable state laws

14   and to arbitrate continuing violations.  Nevertheless, that does not remedy the fact that the IRA's

15   shortened limitations period applies only to employees.  For example, in *Pokorny,* a similar

16   provision was found unconscionable because it shortened a potentially longer statute of limitations

17   period for any claim that the defendant's distributors might wish to bring against the defendant (or

18   another distributor), but did not impose a similar time restriction on the defendant, which

19   remained free to bring an action in court without being subject to the agreement's limitations

20   period.  601 F.3d at 1001-002.  In concluding that the provision was unconscionable, the Ninth

21   Circuit reasoned that "[p]articularly in situations like this one, where no special circumstance

22   necessitates a non-mutual provision, a unilateral reduction in the statute of limitations is an

23   indicator of substantive unconscionability."  *Id*. at 1001.  Pinnacle having offered no reason why a

24   unilateral reduction in the statute of limitations is required, this provision is substantively

25   unconscionable.

26           **c.     Claim Submission and Filing Fee**

27   To initiate a claim against Pinnacle, the IRA requires employees to pay a $50.00 filing fee

28   to "American Management Services."  Dkt. No. 14-1 at ECF p. 11, IRA Rule 4.a.  Ms. Prasad

10

contends that this provision is unconscionable because it essentially requires employees to pay Pinnacle for the privilege of bringing a claim.

In its reply papers, Pinnacle seems to suggest that "American Management Services" is not Pinnacle. Dkt. No. 16 at 9 ("Lastly, the small $50 fee for filing does not go to 'the very entity against which Plaintiff seeks redress'—it goes to American Management Services, which is *not* the entity against which Plaintiff seeks redress.") However, at the initial hearing on the present motion, defense counsel acknowledged that "American Management Services" is Pinnacle. He further stated that the $50 fee goes toward the arbitration costs and is not kept by the company. However, none of that is apparent from the IRA itself. Instead, the IRA indicates that to initiate a claim, an employee must submit an Arbitration Request Form, along with a $50 fee, and then Pinnacle has 30 days to respond to the employee's claim. The claim will proceed to arbitration if the employee is dissatisfied with Pinnacle's response or if Pinnacle fails to respond to the claim within 30 days (or some mutually agreed upon extended period). Dkt. No. 14-1 at ECF p. 11, IRA Rule 4.b.ii.

Pinnacle nevertheless argues that (1) the $50 fee is much smaller than the $400 filing fee Ms. Prasad had to pay to file the present action; and (2) Ms. Prasad never claimed an inability to pay the $400 filing fee by, for example, filing an application to proceed *in forma pauperis*. These arguments are unavailing.

In *Armendariz,* the plaintiff challenged an arbitration agreement that required employees to pay a share of the arbitrator's fees and expenses. The California Supreme Court concluded that the imposition of substantial forum fees is contrary to public policy and, therefore, a ground for invalidating or revoking an arbitration agreement:

> Accordingly, consistent with the majority of jurisdictions to consider this issue, we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court.

*Armendariz*, 24 Cal.4th at 110-11. In *Ingle*, the Ninth Circuit found a similar $75 filing fee was unconscionable, because employees were required to pay that fee to the defendant-employer as

part of the process for initiating a claim against the company. While *Ingle* acknowledged that a "true filing fee might be appropriate under *Armendariz*," the fee at issue essentially "require[ed] employees to pay the fee to the very entity against which they seek redress," and therefore was not a type of expense that the employee would be required to bear in court. 328 F.3d at 1177.

The IRA's filing fee is substantively unconscionable.

### d.     Cost-Splitting

The IRA requires the parties to split the costs of arbitration, no matter what the result, except that the employee's share is limited to $100:

> The Company shall advance all costs of arbitration. Each Party shall advance its own incidental costs. Subject to the other provisions of this Rule set forth below, each Party shall pay one-half of the costs of arbitration following the issuance of the arbitration award. The Employee's liability for the costs and fees of arbitration, other than attorney's fees, however, shall be limited to $100.

Dkt. No. 14-1 at ECF p. 17, IRA Rule 13.a.ii.

Ms. Prasad objects to this requirement on the ground that requiring employees to pay for a share of the costs is unconscionable. Pinnacle contends that Ms. Prasad's cited cases are inapposite because the IRA limits an employee's share of the costs to no more than $100.

In *Ingle*, the Ninth Circuit rejected a cost-sharing scheme. There, the arbitration agreement provided that "each party shall pay one-half of the costs of arbitration following the issuance of the arbitration award." 328 F.3d at 1177. Additionally, the agreement provided that if the employee was unsuccessful on her claim, then the arbitrator had the discretion to charge the employee for the defendant-employer's share of the arbitration costs. The Ninth Circuit concluded that the fact that the employee potentially could be held responsible for the defendant's arbitration costs if her claim failed was sufficient to find the cost-sharing provision unconscionable. However, the Ninth Circuit found the provision especially unfair because it would require even a successful employee to bear her share of the arbitration costs. *Id*. at 1178. Although other provisions of the agreement apparently limited an employee's liability for fees, the Ninth Circuit was not swayed because the "default rule is that employees will share equally in the cost of arbitration." *Id*. at 1178 n.18.

Pinnacle points out that here, unlike in *Ingle*, the IRA's default rule is that an employee will not pay more than $100 for the arbitration fees and costs (in addition to the filing fee, discussed above). Nevertheless, to the extent that a strict interpretation of *Ingle* counsels against such cost-sharing provisions, the Court finds that the IRA's cost-sharing provision is unconscionable, but that Ms. Prasad has only demonstrated a modicum of unconscionability with respect to that provision.

### e.  Pinnacle's Right of Unilateral Modification

Ms. Prasad argues that the IRA is unconscionable because it gives Pinnacle the unilateral right to modify or terminate the agreement's terms:

> In general, the parties agree that the Company may alter or terminate the Agreement and these Issue Resolution Rules on December 31st of any year upon giving 30 calendar days written notice to Employees, provided that all claims arising shall be subject to the Agreement and corresponding Issue Resolution Rules in effect at the time the Arbitration Request Form is submitted and filing fee paid. In addition, any party may elect to waive enforcement of any of these Rules, so long as that waiver works to benefit the other party or parties in the arbitration.

Dkt. No. 14-1 at ECF p. 18, IRA Rule 19.

Pinnacle argues that any measure of unconscionability is minimal because the IRA clearly requires advance notice to employees. For that reason, Pinnacle says that plaintiff's cited cases are inapposite.

In *Ingle*, the Ninth Circuit found a similar provision unconscionable. 328 F.3d at 1179. Even though advance written notice was required, the Ninth Circuit concluded that the provision was unconscionable because "such notice is trivial when there is no meaningful opportunity to negotiate the terms of the agreement. By granting itself the sole authority to amend or terminate the arbitration agreement, [defendant] proscribes an employee's ability to consider and negotiate the terms of her contract." *Id.* The Ninth Circuit further found that the unfairness of the provision was compounded by the fact that the arbitration agreement at issue was an adhesive contract, in the first instance. *Id.*

More recently, district courts within the Ninth Circuit have disagreed whether unilateral modification provisions are substantively unconscionable. *Mikhak v. Univ. of Phoenix*, No. C16-

00901 CRB, 2016 WL 3401763, at *10-11 (N.D. Cal., June 21, 2016). As discussed in *Mikhak*, courts upholding unilateral modification provisions have reasoned that such clauses are limited by the duty to exercise the right of modification fairly and in good faith. *Id*. at *10 (citing *Slaughter v. Stewart Enters., Inc.*, No. 07-01157-MHP, 2007 WL 2255221, at *10 (N.D. Cal., Aug. 3, 2007)); *see also Borgarding v. JPMorgan Chase Bank*, No. CV 16-2485 FMO (RAOx), 2016 WL 8904413, at *8 (C.D. Cal., Oct. 31, 2016) (concluding that a unilateral modification provision was not substantively unconscionable, and noting a consistent trend among California Courts of Appeal upholding unilateral modification provisions because implied in the unilateral right to modify is the obligation to do so upon reasonable and fair notice). *Borgarding* also noted that in at least one unpublished decision, the Ninth Circuit came to the same conclusion. *See Ashbey v. Archstone Prop. Mgmt., Inc.*, 612 Fed. App'x 430, 432 (9th Cir. 2015) ("Finally, unilateral modification provisions, such as the one in the acknowledgement [the employee] signed, are not substantively unconscionable because they are always subject to the limits 'imposed by the covenant of good faith and fair dealing implied in every contract.'") (quoting *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App.4th 695, 706 (2013)).

Here, the IRA's unilateral modification provision weighs less heavily in Pinnacle's favor because it requires advance written notice and also prohibits retroactive modifications. As observed in *Mikhak*, however, *Ingle* is controlling authority. Thus, this Court concludes that the unilateral modification provision is unconscionable, because it withholds bargaining power from employees and because the IRA is a contract of adhesion in the first instance.

### f.    Confidentiality Provisions

The IRA provides that, "[u]nless otherwise disallowed by statute," all aspects of an arbitration are confidential and not open to the public except (1) to the extent the parties otherwise agree in writing; (2) as may be appropriate in subsequent proceedings between the parties; or (3) as may otherwise be appropriate in response to a government agency or legal process. Dkt. No. 14-1 at ECF p. 15, IRA Rule 9.g.

Ms. Prasad argues that such provisions favor companies over employees because they essentially operate as "gag orders" and make it difficult for a plaintiff to mitigate the effects of bad

behavior by a "repeat offender" employer. Pinnacle contends that the confidentiality provision is not unconscionable because it provides that the parties can agree otherwise and also provides that arbitration will not be confidential if confidentiality is disallowed by statute.

Ms. Prasad relies primarily on the Ninth Circuit's decisions in *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), abrogated on other grounds as recognized in *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013), and *Pokorny*, discussed above. Neither directs a finding of substantive unconscionability here.

*Davis* concluded that the confidentiality clause in question was so broad that it unconscionably favored the defendant. The clause "preclude[d] even mention to anyone 'not directly involved in the mediation or arbitration' of 'the content of the pleadings, papers, orders, hearings, trials, or awards in the arbitration' or even 'the existence of a controversy and the fact that there is a mediation or an arbitration proceeding.'" 485 F.3d at 1078. Such a clause, the Ninth Circuit reasoned, "would prevent an employee from contacting other employees to assist in litigating (or arbitrating) an employee's case" and would also "handicap if not stifle an employee's ability to investigate and engage in discovery." *Id.* At the same time, the court noted that the clause would put the defendant in a "in a far superior legal posture by preventing plaintiffs from accessing precedent while allowing [defendant] to learn how to negotiate and litigate its contracts in the future." *Id.* (internal quotations omitted and citations omitted).

In so concluding, the Ninth Circuit pointed out that "[t]his does not mean that confidentiality provisions in an arbitration agreement are per se unconscionable under California law." *Davis*, 485 F.3d at 1079. The court emphasized that "[t]he concern is not with confidentiality itself but, rather, with the scope of the language of the [arbitration agreement]." *Id.*

Several years later, in *Pokorny*, the Ninth Circuit reviewed a confidentiality provision that prevented the defendant's distributors "from disclosing 'to any other person not directly involved in the conciliation or arbitration process (a) the substance of, or basis for, the claim; (b) the content of any testimony or other evidence presented at an arbitration hearing or obtained through discovery; or (c) the terms [or] amount of any arbitration award.'" 601 F.3d at 1001. Further, the confidentiality provision took effect once a distributor became aware that she had a claim. *Id.*

15

Thus, once aware of a potential claim, the distributor was "forever barred from disclosing to anyone not involved in the resolution of that claim the basis for it, the evidence supporting it, or the outcome of the arbitration," whereas the defendant was not similarly barred. *Id. Pokorny* held that the confidentiality provision, like the one in *Davis*, would unfairly hamper the employee's ability to investigate and prepare her case. *Id.* at 1001-02.

The IRA's confidentiality provision is not nearly as broad as those in *Davis* or *Pokorny*. More recently, in *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251 (9th Cir. 2017), the Ninth Circuit reviewed a confidentiality provision that is similar to the one in the IRA. The *Poublon* provision stated:

> All aspects of the arbitration, including without limitation, the record of the proceeding, are confidential and shall not be open to the public, except (a) to the extent both Parties agree otherwise in writing, (b) as may be appropriate in any subsequent proceedings between the Parties, or (c) as may otherwise be appropriate in response to a governmental agency or legal process, provided that the Party upon whom such process is served shall give immediate notice of such process to the other Party and afford the other Party an appropriate opportunity to object to such process.

*Id.* at 1265. Rejecting the argument that *Pokorny* mandated a finding of substantive unconscionability, the Ninth Circuit reasoned:

> This argument fails. Several years after *Pokorny* was decided, the California Court of Appeal considered a trial court's denial of an employer's motion to compel arbitration. *Sanchez v. CarMax Auto Superstores Cal. LLC*, 224 Cal.App.4th 398, 168 Cal.Rptr.3d 473 (2014), *review denied* (June 11, 2014). The employee opposed the motion, on the ground that the arbitration agreement was unconscionable. *Id.* at 401, 168 Cal.Rptr.3d 473. Among the allegedly unconscionable provisions was a confidentiality provision requiring "that the arbitration (including the hearing and record of the proceeding) be confidential and not open to the public unless the parties agree otherwise, or as appropriate in any subsequent proceeding between the parties, or as otherwise may be appropriate in response to governmental or legal process." *Id.* at 408, 168 Cal.Rptr.3d 473. The trial court held that this provision, along with others in the agreement, unreasonably favored the employer because "they inhibit employees from discovering evidence from each other" while "[n]o such restrictions are applied in a court action." *Id.* The California Court of Appeal rejected this reasoning, holding that there is nothing unreasonable or prejudicial about "a secrecy provision with respect to the parties themselves," and the provision requiring confidentiality was not unconscionable. *Id.* (quoting *Woodside Homes of Cal., Inc. v. Superior Court*, 107 Cal.App.4th 723, 732, 132 Cal.Rptr.2d 35 (2003)).

> This holding is directly on point. The confidentiality provisions in both the Arbitration Procedure at issue here and in *CarMax* are substantially

identical: they both require that the arbitration, including the record of the proceeding, be confidential, and they both include the same enumerated exceptions. *See id.* Moreover, the California Court of Appeal rejected the same policy argument that Poublon makes here, namely that such confidentiality provisions "inhibit employees from discovering evidence from each other." *See id.*

In the absence of any decision on this issue from the California Supreme Court, we are bound by *CarMax*, as the ruling of the highest state court issued to date. . . .

*Poublon*, 846 F.3d at 1266. The IRA's confidentiality provision is much closer to the one at issue in *Poublon* than those in question in *Davis* and *Pokorny*. This Court agrees with *Poublon* and concludes that it directs a finding that the IRA's confidentiality provision is not substantively unconscionable.

### 3. Severability

As discussed above, Pinnacle argues that any unconscionable terms may be severed from the IRA, and that the remaining terms properly may be enforced. Ms. Prasad contends that any agreement that contains more than one unconscionable term necessarily is permeated with unlawfulness and must be held unenforceable.

As previously discussed, California law provides that when a court finds that a contract or any clause in it was unconscionable at the time it was made, the court "may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a). "A court may 'refuse to enforce the entire agreement' only when it is 'permeated' by unconscionability.'" *Poublon*, 846 F.3d at 1272 (quoting *Armendariz*, 24 Cal.4th at 122).

"Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Armendariz*, 24 Cal.4th at 124. "If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." *Id.*; *see also Poublon*, 846 F.3d at 1272 (same).

Although Ms. Prasad contends that more than one unconscionable clause necessarily invalidates the entire contract, "California courts have not adopted such a per se rule." *Poublon*,

846 F.3d at 1273.  Rather, "the dispositive question is whether the central purpose of the contract is so tainted with illegality that there is no lawful object of the contract to enforce."  *Id*. (internal quotations and citation omitted).

Thus, courts properly may refuse to enforce an agreement where unconscionable provisions are too numerous and too important to be severed from the whole.  *See Armendariz*, 24 Cal.4th at 124 (stating that multiple defects may "indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage.").  For example, the two defects in *Armendariz* were (1) a provision that purported to limit an employee's damages allowed by statute; and (2) provisions that made arbitration unilateral, i.e., employees were required to arbitrate their claims against the employer, but the employer was free to litigate its claims against employees in court.  The California Supreme Court declined to find that an unlawful damages provision, by itself, would justify a court's refusal to enforce an agreement.  However, *Armendariz* emphasized that the lack of a bilateral arbitration requirement as between the employer and its employees was not a defect that could be fixed by severance or restriction, but only by the addition of terms.  Such reformation of the contract is not authorized by Cal. Civ. Code § 1670.5.  *Id*. at 124-25.  Similarly, in *Ingle*, the entire agreement was found unenforceable where provisions, including the lack of a bilateral arbitration requirement and limitations on remedies available to employees, when combined with other terms, "stack[ed] the deck unconscionably in favor of [the employer."  328 F.3d at 1180.

Here, by contrast, claims of both Pinnacle and its employees are subject to arbitration.  Dkt. No. 14-1 at ECF p. 6-7.  There is no issue or argument presented as to any unconscionable limitation on the relief available to employees.  And, while the Court has found several provisions unconscionable, including several that also were at issue in *Ingle*, each of those provisions is collateral to the IRA's central purpose, which is to provide an alternate forum, before the American Arbitration Association or Judicial Arbitration Mediation Services, for the resolution of disputes between Pinnacle and its employees.  Thus, the Court does not find that the IRA is so tainted with illegality that there is no lawful object of the contract to enforce.  Nor is the Court persuaded by Ms. Prasad's contention that extirpating the unconscionable provisions from the IRA

would render the contract a nullity.

The Court will, in its discretion, sever the unconscionable provisions from the IRA and enforce the remainder. Ms. Prasad may not maintain the class, collective and representative claims asserted in her original complaint, and the Court grants Pinnacle's motion to compel arbitration as to Ms. Prasad's individual claims. Further, Ms. Prasad agreed at oral argument that her PAGA claim should be stayed pending arbitration of her individual claims.

Accordingly, the Court stays this action pending completion of arbitration of Ms. Prasad's individual claims. As noted in the Court's separate order on Ms. Prasad's motion for leave to file an FAC, during the stay, the Court will administratively close this case, signifying only that the matter is being removed from the Court's docket of active litigation. Any party may move to reopen this matter should a change in circumstances warrant it. In any event, the parties shall provide the Court with a status report within 10 days of the completion of their arbitration.

## IV.  CONCLUSION

Based on the foregoing, the portions of the IRA found unconscionable are severed from the Agreement, Pinnacle's motion to compel arbitration is granted as to Ms. Prasad's individual claims, and this matter is stayed pending the completion of the arbitration. The Clerk shall administratively close this file.

**IT IS SO ORDERED.**

Dated:   September 25, 2018

_Virginia K. DeMarchi_
VIRGINIA K. DEMARCHI
United States Magistrate Judge